## AS TO LIABILITY OF STOCKHOLDER WHOSE SUBSCRIPTION WAS SECURED BY FRAUD.

Circuit Court of Cuyahoga County.

MATILDA A. GILL V. THE CLEVELAND PRINTING & PUBLISHING COMPANY ET AL, AND THIRTEEN OTHER CASES.*

Decided, June 3, 1907.

*Corporations—Stock Subscriptions Secured by Fraud—Stockholders Liability—Novation—Liquidating Trustees May Not Acquire Title to Stock.*

1. Where a note evidencing a debt upon which stockholders would be liable, was transferred after the change in the law by which stockholders liability was abolished, and was subsequently renewed by and in the name of the transferee, there was such a novation that the original debt and its incidents were extinguished.

2. When one is induced through fraudulent representations to subscribe for stock in a corporation, upon the insolvency of the corporation he will be liable as a stockholder so far as creditors of the corporation who became such subsequent to the date of his subscription are concerned, but as to other stockholders, he himself is a creditor.

3. Liquidating trustees of an insolvent corporation have no authority to acquire the legal title to stock which has been pledged with the insolvent corporation to secure a loan and when such stock is transferred to them, the corporation which they are liquidating does not become liable as a stockholder, nor for unpaid subscriptions on the stock transferred.

*A. N. Thompson,* for plaintiff.

*A. T. Brewer, W. W. Elliott, Calhoun & Guenther, A. B. Thompson, Hills & Van Derveer, Laubscher & Kees, Herrick & Hopkins, M. L. Thompson, C. K. Fauver* and *C. A. Judson,* contra.

HENRY, J.; MARVIN, J., and WINCH, J., concur.

This is an appeal of a stockholder's liability case, and, as that subject is now practically obsolete, we announce our conclusions without any extended opinion.

*Affirmed without opinion, *Union National Bank* v. *Gill et al,* 80 Ohio State, 742, with a modification permitting all creditors of the corporation to participate in the fund arising from unpaid stock subscriptions.

The first question concerns the Union National Bank's claim, and is, in brief, whether the secondary liability of stockholders meanwhile abolished, continues to attach to a debt, the note evidencing which is transferred after the change in the law and subsequently renewed by and in the name of the transferee. We think this is such a novation, as extinguishes the original debt and its incidents. Section 3175*j*, Revised Statutes of Ohio; *Cason* v. *Wallace*, 4 Bush. (Ky.), 388; on rehearing former judgment adhered to, no report, 81 O. S., 515; *Battle* v. *Coit et al*, 26 N. Y., 404.

The second question involves the right after adjudication of the corporation's insolvency to rescind subscription to its stock theretofore fraudulently procured by such corporation.

We adhere to a former decision of this court that no such rescission can be made to the prejudice of the corporation's creditors. We think, however, that the rule does not apply as between the rescinding subscriber and other stockholders of the corporation. Hence creditors of stockholders whose subscriptions were procured by fraud, can not resort to either primary or secondary liability unless and until the liability of all other stockholders is exhausted.

The defrauded stockholders will, moreover, be treated as creditors but not to the prejudice of any other creditor of the insolvent corporation. The defrauded stockholders included all whom the referee found to have been defrauded, excepting Brockett, who became a director in September, 1903, and continued to act in that capacity until the corporation was adjudged insolvent, more than a year afterwards. He is therefore, presumed to have acquired knowledge of the corporation's insolvent condition long before he made use of that knowledge as the basis for rescinding his subscription.

His laches thus prevents his effecting such rescission. *Parmalee* v. *Adolph*, 23 O. S., 10.

We think *Mason* v. *Moore*, 73 O. S., 275, does not conflict with the imputation of laches to Brockett.

The third question concerns the State Savings & Loan Company, whose alleged ownership of stock in the insolvent corpora-

tion accrued while it was being voluntarily liquidated by trustees appointed under the Ohio statute. These trustees had no authority in law to acquire stock of other corporations except, if at all, in necessary aid of such liquidation. The trust had nothing to gain and much to lose by the acquisition of the general title to stock, of which the liquidating corporation was theretofore the mere pledgee. And all the world is conclusively presumed to have known this limitation of the liquidating trustee's authority. Nor could their authority be enlarged by estoppel. We hold, therefore, that the State Savings & Loan Company is not liable as a stockholder herein, either by way of unpaid subscription or secondary liability.

The fourth question involves the construction of the action taken at the stockholders meeting of February 10, 1903, and on this point we are content with and follow the decision of the court of common pleas, modifying the report of the referee.

The fifth question involves the right of set-off against J. A. Starral. He acquired, by assignment, a past due note of the insolvent corporation, payable to W. M. Day and F. J. Starral jointly. Both payees were then indebted to the maker of the note. Day's debt was overdue; Starral's was not yet due. Day was then insolvent and F. J. Starral either was then or soon after became insolvent.

Although the authorities are not harmonious we think the right of equitable set-off as against Day's interest in the note existed at that time, and if so, it extends to that interest after Day's assignment to J. A. Starral. The assignment of the note was the joint act of Day and of F. J. Starral, and though the evidence fails to show strictly that the latter's insolvency had at that time actually accrued, he was clearly in failing circumstances, which, in view of his relation to the insolvent company, at least forecasted the impending event.

Under all the circumstances of the case we think it would be inequitable to hold his interest in the note invulnerable to set-off. It follows, that although the referee's findings of fact are, in these respects, incorrect, his conclusion of law is applicable to the facts as they actually existed.

In all respects except as we have otherwise indicated the decree here will follow the decree below. As to the matter of costs we do not feel authorized to alter the discretionary allowance made by the court of common pleas to its referee.